# Keim and Keim *v.* Lochrie and Reese, Appellants.

*Lease—Coal mining lease—Construction of—Royalties.*

In an action of assumpsit on a coal mining lease to recover royalties alleged to be due on coal which should have been mined under its terms, the lease provided for the mining of coal under a nine acre tract described therein. The tract was crossed by a road and a stream. By the terms of the contract, defendants were required to mine all the coal "which is capable of being mined" under the entire tract, except such pillars of coal as was necessary to support the surface. A lot fifty feet square under a dwelling house was also excluded. There was a provision that a royalty should be paid on all coal mined, and also on all coal which the lessee might have mined but did not remove. Defendants failed to mine the

coal under the road and stream, alleging that to do so would be expensive and dangerous.

In such case the coal lying under the road and stream was included within the terms of the lease, and judgment for the plaintiff will be sustained.

In ascertaining the intention of the parties to such a contract, the Court will consider the contract in view of the circumstances existing at the time of its execution, the situation of the parties at that time, the necessities for which they naturally provided, and the advantage each probably sought to secure.

Argued April 25, 1928.    Appeal No. 533, April T., 1928, by defendants, from judgment of C. P., Cambria County, September T., 1925, No. 972, in the case of Catherine Keim and Peter Keim v. Thomas Lochrie and J. E. Reese, trading and doing business as Tunnel Smokeless Coal Company.    Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.    Affirmed.

Assumpsit on a coal mining lease to recover royalties on coal which should have been mined under the terms of the lease.    Before EVANS, P. J.

**The facts are stated in the opinion of the Superior Court.**

Verdict for plaintiffs in the sum of $2,150.86, and judgment thereon.    Defendants appealed.

*Errors assigned,* among others, were the refusal of defendants' motion for new trial, and the decree of the court.

*Percy Allen Rose,* and with him *John A. Hartmann,* for appellants.

*Frank P. Barnhart,* of *Barnhart & Bender,* for appellee.

OPINION BY LINN, J., July 12, 1928:

Plaintiffs sued on a so-called coal-mining lease for minimum royalty alleged to be due on coal which was

not, but should have been, mined out of a 9 acre tract described in the lease. The veins of coal extended under a public road and under a stream on the tract, the area of the coal under both being 2.54 acres. The lease was of "all the marketable coal contained in the 'E' or coke yard seam; the C-prime or cement seam; and the 'B' or Miller seam under all that certain tract" of land etc. The defense was that the contract did not require defendant to mine the coal under the road and under the stream. The tonnage so unmined was ascertained by a special verdict, and judgment was entered for plaintiffs in accord with their contention that defendant was required to mine that coal or to pay royalty instead.

We agree with the construction of the contract made below. In Tucker v. Fertig, 275 Pa. 351, 353, it is said: " ....... in ascertaining the intention of the parties, we may properly consider the contract in view of the circumstances existing at the time of its execution, the situation of the parties at that time, the necessities for which they naturally provided, the advantages each probably sought to secure and the relation of the properties in regard to which they negotiated: Lacy v. Green, 84 Pa. 514; Republic Trust Co. v. Hughes, 262 Pa. 159, 166." More recently, in Van Horn v. Kemena, 281 Pa. 579, 581, it was said: "Agreements should be construed with reference to the circumstances under which the parties contract: Perry v. Payne, 217 Pa. 252, 257. If this provision is capable of two interpretations it should be construed most strongly against the person whose undertaking it is; Bole v. New Hampshire Fire Insurance Company, 159 Pa. 53, 56."

The pertinent provision of the contract is as follows: "The lessee will work the said seams of coal according to the most approved methods of mining bituminous coal without injuring, wasting, or destroying any of the coal which is capable of being mined and

shipped, so that all the coal shall be taken out clean and entire from the said seams of coal, excepting such pillars or supports of coal to an amount not less than twenty-five (25) per cent. of all the coal in said C-Prime vein and not over thirty-three and one-third (33 1/3) per cent. of all the coal in said C-Prime vein, said pillars to be located by the lessee to protect and support the surface to the best advantage.'' The contract proceeds with further details concerning the removal of the pillars.   It also provided that ''lessee shall leave a lot 50 feet square in both the C-Prime or cement seam and the 'B' or Miller seam under the dwelling house located on said tract .......''   There is a provision ''that when the lessee shall have paid ....... royalty ......, on all coal mined and also on all coal which may not have been mined and removed by the lessee, which the lessee is entitled to mine and remove ....... all obligations of the lessee to pay royalty shall'' cease.

Defendant contends that to mine the coal under the road and under the stream will be very expensive and dangerous, and for that reason its mining cannot have been in the contemplation of the parties when the contract was made, and therefore should not be included in the words ''so that all the coal shall be taken out clean and entire from the said seams ......''  But it is not impossible to mine the coal, it can be mined; and all the circumstances and conditions incident to and constituting part of the subject matter of the contract were known to both parties when it was made: Redstone Oil Co.'s Dissolution, 207 Pa. 125, 130.  The words describing defendant's obligation certainly comprehend the coal in question; the only exception made is of pillar coal and of the coal under the house.  The construction of the paper is for the court; it contains no peculiar terms or particular trade names of local application requiring explanation by witnesses.  Each party knew that the other would understand the words

in their ordinary sense as applied to the subject matter of the contract, and therefore cannot complain if the words are taken in that sense. Would the plaintiffs have accepted the specified rate of royalty for the coal under an area of between 6 and 7 acres, when they had 9 acres of coal they wished to sell? We cannot say that they would have because the words of their contract are against such assumption; if that was not also defendant's understanding of the words as applied to a physical condition familiar to both parties, the defendant should have seen to it that the exception was also specified just as the pillar coal and the coal under the house were excepted: Corona Coal Co. v. Dickinson, 261 Pa. 589, 592. We are unable to agree with defendant that the mining of the coal under the 2.54 acres is not within the terms of its expressed obligation.

As no other question is raised, judgment is affirmed.